FOSTER HATCHER v. WILLIAM WILSON GWALTNEY, FREDERICK PARKER SMITH, JR., AND FREDERICK PARKER SMITH, SR.

(Filed 11 January 1963.)

**Automobiles § 45—**

Evidence that plaintiff turned his vehicle to the left to enter a filling station on his left side of the highway when defendant's oncoming car was some 100 feet distant, but that when the cars were approximately 60 feet apart plaintiff stopped his car, blocking defendant's lane of travel, and that defendant did not then have time to avoid collision, *is held* not to raise the issue of last clear chance, since this doctrine arises only when there is a sufficient time for defendant to avoid the accident after defendant should have discovered plaintiff's perilous position.

APPEAL by plaintiff from *Olive, J.,* April Term 1962 of RANDOLPH.

The plaintiff instituted this action on 27 February 1961 to recover for personal injuries and property damages allegedly sustained in a motor vehicle collision which occurred on 20 January 1961 on Highway No. 64 about three miles east of Asheboro in Randolph County, North Carolina.

The defendants, in answering the plaintiff's complaint, denied negligence, alleged contributory negligence, and denied agency between the defendant William Wilson Gwaltney and the defendant owner Frederick Parker Smith, Sr., who was not present. The defendants Smith, Jr. and Smith, Sr. set up counterclaims against the plaintiff for their damages. By way of reply, the plaintiff alleged that the defendants had the last clear chance to avoid the collision.

Prior to the time of the trial the two counterclaims were settled and a sum of money was paid to defendant Smith, Jr. for his personal injuries and to defendant Smith, Sr. for property damages. The two counterclaims were dismissed as of voluntary nonsuit by judgment entered in the Superior Court of Randolph County on 27 November 1961.

The plaintiff's evidence tends to show that about 10:30. p.m on 20 January 1961 the plaintiff was going from his home to Boone's Service Station for gas; that he entered Highway No. 64 from the Cedar Falls Road; that before entering, he stopped and saw no traffic approaching from the east on said highway but observed several cars approaching from the west about two-tenths of a mile away; that he put his car in low gear, entered the highway, and kept his car in low gear and traveled westwardly for a distance of about 150 feet to the entrance to Boone's Service Station, located to his left. That the three cars approaching from the west had on bright lights; he testified he "patted the button for their dimmers" but the front car did not dim its lights;

that the lights blinded him and he stopped; that he "knew" he was on his side of the road, but just before the collision he saw his "front wheel was on the line."

On cross-examination, the plaintiff admitted that he was mistaken about stopping on his side of the road; he admitted that the wheel of his car was some 14 inches over in the east lane of traffic.

The Highway Patrolman who investigated the accident immediately after it occurred testified that the collision occurred in the east lane of traffic; that the car the defendant Gwaltney was driving skidded some 51 feet before the collision and that all skid marks and the debris were in Gwaltney's lane of traffic. The patrolman further testified that the plaintiff told him he "started to make his left turn, and he saw the cars approaching and saw he couldn't make his turn, and that he then stopped. He said he stopped because he didn't have time to make his turn. He did not say anything about being blinded by any lights. Yes, he said that he had a beer to drink. I questioned him because he had the odor of some intoxicant on his breath. He said he had one or two beers."

The defendants' evidence tends to show that defendant Smith, Jr. and defendant Gwaltney had been to Atlanta to attend a school for mechanics. Smith, Jr. is a married man and maintains his own home in Virginia. He had borrowed his father's car for the purpose of making the trip to Atlanta. His own car was not in good running order. Smith, Jr. was not a member of the household of Smith, Sr., nor was he his employee or on an errand for or on behalf of his father.

The defendant Gwaltney testified that he was driving at the time of the collision; that he was traveling about 45 miles per hour; that he observed the plaintiff's car traveling west when they were about 250 feet apart; that the plaintiff, without giving any signal, turned to the left when the two cars were from 100 to 115 feet apart; that when he saw the plaintiff start across his lane of traffic, he took his foot off the accelerator, but when the cars were approximately 60 to 65 feet apart, the plaintiff stopped his car when he was about half way across his, defendant Gwaltney's, lane of travel; that he applied his brakes and did everything he could to avoid the collision.

The Presiding Judge declined to submit the issue of last clear chance.

The jury found that the defendant Gwaltney was not operating the automobile owned by defendant Smith, Sr. as the agent of Smith, Sr.; that Gwaltney was negligent and that the plaintiff was contributorily negligent.

From the judgment entered on the verdict the plaintiff appeals, assigning error.

*H. Wade Yates for plaintiff.*

STATE *v.* HARRINGTON.

*Smith, Moore, Smith, Schell & Hunter; Stephen Millikin for defendants.*

PER CURIAM. A careful examination of the exceptions and assignments of error does not reveal any prejudicial error in the trial below that would justify a new trial. Moreover, the plaintiff in his brief cites no authority in support of any argument on any assignment of error except as to the refusal of the court below to submit the issue of last clear chance.

In our opinion, the evidence adduced in the trial below did not warrant submission of the issue on the question of last clear chance.

The last clear chance doctrine contemplates "a last 'clear' chance, not a last 'possible' chance, to avoid the accident; it must have been such a chance as would have enabled a reasonably prudent man in like position to have acted effectively. * * * The application of the last clear chance doctrine is invoked only where there was a sufficient interval of time between the plaintiff's negligence and his injury during which the defendant, by the exercise of reasonable care could or should have discovered the perilous position of the plaintiff in time to avoid injuring him.

"The original or primary negligence of a defendant, which would warrant answering the first issue in the affirmative, cannot be relied upon by the plaintiff to recover under the last clear chance doctrine. A recovery on the original negligence is barred in such cases by the plaintiff's contributory negligence. The plaintiff's right to recover, notwithstanding his own negligence, must arise out of a factual situation which gave the defendant an opportunity, through the exercise of reasonable care, to have avoided the injury to him, but failed to do so." *Aydlett v. Keim,* 232 N.C. 367, 61 S.E. 2d 109; *Ingram v. Smoky Mountain Stages, Inc.,* 225 N.C. 444, 35 S.E. 2d 337; 38 Am. Jur., Negligence, sec. 218, page 903, *et seq.*

In the trial below, we find

No error.